**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**UNITED STATES OF AMERICA,**

                              **v.**                                    **8:07-CR-373**
                                                                              **(FJS)**

**ROGER ROBARE,**

                                        **Defendant.**

─────────────────────────────────────

**APPEARANCES**                              **OF COUNSEL**

**OFFICE OF THE UNITED**                     **ROBERT A. SHARPE, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
Room 218
445 Broadway
Albany, New York 12207-2924
Attorneys for the United States

**OFFICE OF THE FEDERAL**                    **TIMOTHY E. AUSTIN, AFPD**
**PUBLIC DEFENDER**
39 North Pearl Street
5th Floor
Albany, New York 12207
Stand-by Attorneys for Defendant

**ROGER ROBARE**
Albany, New York 12211
Defendant *pro se*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Defendant is charged in a four-count Superseding Indictment with possession of a

"sawed-off" shotgun and ammunition.  Count I alleges that Defendant knowingly possessed a

shotgun with a modified overall length of less than 26 inches and a barrel less than 18 inches in

violation of 26 U.S.C. §§ 5845(a)(2), 5861(c), and 5871.  Count II alleges that Defendant

knowingly possessed a firearm with a serial number not registered to him in the National

Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

Count III alleges that Defendant, having a prior felony conviction, knowingly possessed a firearm

in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Count IV alleges that Defendant, having a

prior felony conviction, knowingly possessed ammunition for a firearm in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2).[1]

The Court denied Defendant's previous motion to dismiss the original Indictment

pursuant to an April 1, 2008 Memorandum-Decision and Order.  *See* Memorandum-Decision and

Order, dated April 1, 2008, at 6.  Rejecting Defendant's arguments that the evidence was legally

insufficient, the Government presented the grand jury with false or misleading evidence, and the

Government failed to properly instruct the grand jury in the law, the Court held that, since the

Indictment was facially valid, Defendant did not demonstrate a ground for dismissal.  *See id.* at 5.

Additionally, the Court held that Defendant did not demonstrate a "particularized need" for

disclosure or *in camera* review of the grand jury minutes.  *See id.* at 5-6.

---

[1] The original, two-count Indictment charged Defendant with knowing possession of a
shotgun with a modified overall length of less than 26 inches and a barrel less than 18 inches in
violation of 26 U.S.C. §§ 5845(a)(2), 5861(c), and 5871 and possession of a firearm by a
convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The Superseding Indictment describes the firearm at issue as an Armory Gun Company
(Crescent Firearms) .16 gauge shotgun.  The original Indictment, however, described the shotgun
as an Armory Gun Company, .20 gauge shotgun.  Although these descriptions differ, they
apparently refer to the same firearm.  Defendant asserts that this discrepancy results from the fact
that the New York State Police improperly labeled the firearm a .20 gauge shotgun; however,
Special Agent Mark Meeks of the Bureau of Alcohol, Tobacco, Firearms and Explosives
("ATF") later identified the firearm as a .16 gauge shotgun.  *See* Dkt. No. 51 at 12.

Currently before the Court are Defendant's seven pretrial motions seeking various forms of relief. *See* Dkt. Nos. 37, 43, 47, 51, 53, 57, 59. As a result of Defendant's numerous filings in this case, the Court consolidated these motions and allowed the parties to present oral argument on them in one single proceeding on June 19, 2008. After oral argument, the Court ruled on some of Defendant's requests and reserved decision on others. The following represents the Court's written determination of all of the issues that Defendant raised in his submissions and at oral argument. The Court will address the issues according to the forms of relief requested. Part III.A will discuss Defendant's discovery requests. Part III.B will discuss Defendant's requests to suppress physical evidence. Part III.C will discuss Defendant's motions to dismiss the Indictment.

## II. BACKGROUND

On July 19, 2007, at 12:30 p.m., a New York State Police trooper responded to a domestic complaint that April Robare made against her husband, Defendant Roger Robare. According to April Robare, Defendant assaulted her at their home in Peru, New York. She stated that, during the conflict, Defendant brandished a shotgun and threatened to kill himself; however, he did not discharge the firearm.

The next day, on July 20, 2007, the state police located Defendant at his sister Wendy Robare's home in Plattsburgh, New York. Wendy Robare had agreed to let Defendant stay as an overnight guest in a camper located on her property while he cooled down from his dispute with his wife. Wendy Robare was not home when the state police first arrived at her house at 10:00 a.m. However, the officers observed that there was someone moving around inside a camper

behind her house.  The officers approached the camper and announced themselves, ordered the

person inside the camper to come out, and stated that they were looking for Roger Robare.  The

person inside the camper did not respond at first, and the officers could hear what sounded like

drawers opening and closing.  Again, the officers ordered the individual out of the camper; and,

when Defendant finally came out, they placed him under arrest.  The police did not search the

camper at that time.

Later, in an effort to find the shotgun that April Robare had described, police obtained

April Robare's consent to search Defendant's and her home in Peru.  The police also obtained a

warrant to search the Peru home and Defendant's car.  When they did not find the weapon at

those locations, the police telephoned Wendy Robare at her place of employment to inform her of

Defendant's arrest and to ask for her consent to search the camper.  She gave the police consent

over the phone and later reaffirmed her consent in writing when she spoke to the police at her

home.  A subsequent search of the camper uncovered what the Government alleges to be a

"sawed-off" shotgun and ammunition.  Wendy Robare told police that neither she nor her

children owned the gun and that she had never seen it before.  On January 29, 2008, the Court

denied Defendant's motion to suppress the physical evidence that police officers seized from

Wendy Robare's camper, holding that Wendy Robare had actual authority to consent to the state

police's search.


## III. DISCUSSION

**A.      Discovery requests**

In various submissions, Defendant requested that the Court compel the Government to

provide him with a number of items pursuant to Rule 16 of the Federal Rules of Criminal

Procedure.  *See* Dkt. No. 37 at 1-3; Dkt. No. 53 at 1-2.  The Government contends that it has

complied with all of Defendant's discovery requests.  Based on the list of items that it claims it

has provided to Defendant, this appears to be true.[2]  Additionally, Defendant withdrew his Rule

16 requests at oral argument.[3]  Thus, the Court denies Defendant's motion to compel as moot.

Defendant also wishes to depose two witnesses pursuant to Rule 15(a)(1) of the Federal

Rules of Criminal Procedure.  *See* Dkt. No. 53 at 3.  Defendant argues that exceptional

circumstances require the preservation of their testimony for trial.  According to Defendant,

"[b]oth witnesses suffer from serious heart conditions; either could expire any day. . . . [One of

the witnesses] claims her doctor advises against traveling; her breathing is assisted by an oxygen

tank. [The other witness] has had open-heart surgery.  I'm not sure about his ability to travel long

distance."  *See id.* at 3-4.

Rule 15(a) provides that "[a] party may move that a prospective witness be deposed in

order to preserve testimony for trial.  The court may grant the motion because of exceptional

circumstances and in the interest of justice."  Fed. R. Crim. P. 15(a).  When considering whether

exceptional circumstances exist, a court must determine whether (1) the witness is unavailable to

testify at trial, (2) the witness' testimony is material to the defendant's case, and (3) the testimony

---

[2] The Court is entitled to rely on the Government's good-faith representation that it has provided Defendant with all required material.  *See United States v. Perez,* 940 F. Supp. 540, 553 (S.D.N.Y. 1996) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to *Brady* where the Government, as here, has made a good-faith representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under *Brady.*" (citations omitted)).

[3] In a submission to the Court, Defendant also appeared to request a bill of particulars; however, he withdrew this request at oral argument.

is necessary to prevent a failure of justice. *See United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir. 1972) (quotation omitted).

At oral argument, the Court denied Defendant's motion to depose the proposed witnesses because he could not show how their testimony would be material to his defense. Defendant contends that their testimony would demonstrate that ATF Special Agent Mark Meeks attempted to compel them to state that they saw Defendant with a sawed-off shotgun even though they told Special Agent Meeks that they did not. However, Defendant did not demonstrate how this would be relevant to the central issues in this case. The Government stated that it would not call these witnesses to testify. Furthermore, it is too speculative at this point in the litigation to anticipate a relevant impeachment use for their testimony.[4] Therefore, as stated at oral argument, the Court denies Defendant's motion to depose these witnesses without prejudice to renew if Defendant demonstrates their unavailability and if the case's development renders their proposed testimony material to the central issues at trial.

**B.      Suppression motions**

*1. Motion for reconsideration*

Defendant moves the Court to reconsider its January 29, 2008 Memorandum-Decision and Order denying his motion to suppress the physical evidence that law enforcement officials

---

[4] Additionally, Defendant has not provided any evidence that his proposed witnesses would be unavailable to attend trial. Physical illness or disability of an elderly witness may be sufficient to demonstrate unavailability. *See United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984) (holding that exceptional circumstances were present where witnesses were elderly, physically infirm, and lived sixty miles from the courthouse (quotation omitted)). However, Defendant merely states that the witnesses he intends to call are elderly and in poor health. He does not provide any specific evidence about their conditions that would establish unavailability.

seized from Wendy Robare's camper.[5]  *See* Dkt. No. 43.  Specifically, he argues that Wendy

Robare did not have authority to consent to the search because he was the sole inhabitant of the

camper at the time that law enforcement officials executed the search.  He claims that there was

no mutual use as *United States v. Matlock*, 415 U.S. 164 (1974), requires.  Moreover, he argues

that the Court should reconsider its decision because he enjoyed a reasonable expectation of

privacy in the camper.

Reconsideration of a court's prior decision is only appropriate if "(1) there is an

intervening change in the controlling law; (2) new evidence not previously available comes to

light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice."

*McCrary v. Fischer*, No. 9:08-CV-0366, 2008 WL 2167991, *1 (N.D.N.Y. May 21, 2008) (citing

*Delaney*, 899 F. Supp. at 925) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782,

789 (2d Cir.), *cert. denied*, 464 U.S. 864 (1983))).  A party may not use a motion for

reconsideration to relitigate issues that the court has already decided.  *See Sequa Corp. v. GBJ*

---

[5] Defendant also submits a letter, dated April 25, 2008, requesting that the Court suppress evidence of the .16 gauge shotgun and .20 caliber ammunition alleged in the Superseding Indictment.  *See* Dkt. No. 54.  He attempts to incorporate by reference the memorandum of law accompanying his earlier motion to suppress as well as his motion for reconsideration.  It is somewhat unclear why he submits an additional letter on this subject.  The most probable explanation is that Defendant believes that the Court's January 29, 2008 Memorandum-Decision and Order only applied to the .20 gauge shotgun erroneously alleged in the original Indictment and that he now wishes to suppress the .16 gauge shotgun and .20 caliber ammunition alleged in the Superseding Indictment.  This additional request is unnecessary.

The .16 gauge shotgun is the same firearm that law enforcement officials earlier believed to be a .20 gauge shotgun.  It was retrieved pursuant to a consensual search of Wendy Robare's camper along with a round of .20 caliber ammunition.  The Court's January 29, 2008 decision was broad enough to encompass any "physical evidence that police officers seized from a camper located on . . . Wendy Robare's property on July 20, 2007."  *See* Memorandum-Decision and Order, dated January 29, 2008, at 1-2.  Therefore, the Court construes this filing as a letter in support of Defendant's motion for reconsideration.

*Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (citations omitted).

Defendant does not contend that intervening law or newly-discovered evidence invalidates the Court's prior decision.  He merely contends that the decision is erroneous. "[W]here the party seeking reconsideration bases its motion upon 'error,' the court has broad discretion and should not disregard the law of the case unless it has a '"clear conviction of error."'"  *Taormina v. Int'l Bus. Machs. Corp.*, No. 1:04-CV-1508, 2006 WL 3717338, *1 (N.D.N.Y. Dec. 14, 2006) (quotation omitted).

The Court previously held that Wendy Robare had authority to consent to a search of the camper because she had legal authority over the camper and physical access to it.

> Ms. Robare owned the camper as well as the property on which it
> was stored.  Defendant sought Ms. Robare's permission to stay in
> the camper overnight.  Ms. Robare gave her permission with the
> understanding that Defendant would stay only as long as it took for
> Defendant and his wife to cool down after their argument.  Since
> Defendant was an overnight guest, Ms. Robare clearly had legal
> access to the camper.  *See Snype*, 441 F.3d at 136 (holding that a
> third party, "as the lessor and resident of the apartment at issue,
> had the access and authority necessary to consent to a search of the
> entire premises[,]" including containers placed there by an
> overnight guest).  She could have entered the camper at any time
> and was free to ask Defendant to leave for any reason or else eject
> him as a trespasser.  Moreover, the camper rested on Ms. Robare's
> property in close proximity to her residence.  She used the camper
> periodically on vacations and, therefore, knew how to gain access
> to the camper.  There is no indication that Defendant used a lock to
> secure the camper or that Ms. Robare did not have a key to the
> camper nor was there an agreement between Defendant and Ms.
> Robare that Ms. Robare would stay out of the camper.

*See* Memorandum-Decision and Order, dated January 19, 2008, at 4.

As the Court stated at oral argument, Defendant's motion is nothing more than an attempt

to relitigate the issue of third-party authority — an issue that the Court already decided.[6]  The

Court, therefore, denies his motion for reconsideration.


### 2. Marital privilege

Defendant requests that the Court suppress the fruits of the search of Wendy Robare's

camper because he contends that the search warrant that law enforcement officials procured was

based on an illegally-obtained statement that his wife, April Robare, made.  *See* Dkt. No. 47 at 9.

Specifically, Defendant argues that April Robare's statement to the police that Defendant

brandished a firearm while arguing with her violated the privilege that inheres in confidential

marital communications.  *See id.* at 9-10.  This argument fails for two reasons.

First, the police's use of April Robare's statement did not violate any privilege.  The

federal courts have developed two kinds of privilege involving the marital relationship pursuant

to the general authority that Rule 501 of the Federal Rules of Evidence grants them.[7]  The first

kind of privilege, the privilege against adverse spousal testimony, may be asserted by an

individual who is asked to testify adversely to his or her spouse.  *See Trammel v. United States*,

445 U.S. 40, 53 (1980).  Defendant may not rely on this privilege, first, because April Robare did

---

[6] Defendant additionally cites a number of cases for the proposition that overnight guests enjoy a reasonable expectation of privacy, *see* Dkt. No. 43 at 3-4 (citing *Minnesota v. Carter*, 525 U.S. 83 (1998); *Minnesota v. Olson*, 495 U.S. 91 (1990)) (other citations omitted); however, these cases have no bearing on the issue of whether Wendy Robare had third-party authority to consent to the search.  In fact, the Court's prior decision is premised on the assumption that Defendant had a reasonable expectation of privacy in the camper and, therefore, had standing to challenge the search.

[7] Rule 501 provides, in essence, that the federal courts have the authority, within the bounds defined by the Constitution and Congress, to develop rules concerning evidentiary privilege.

not testify against him in court, *see United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir.

1980) (holding that the privilege against adverse spousal testimony does not apply where the

defendant's wife provided information that was used to support the issuance of a search warrant

(citation omitted)); and, second, because only the spouse who has been asked to testify may

assert the privilege, not the defendant.[8]  *See Trammel*, 445 U.S. at 53.

The second kind of privilege, the confidential marital communications privilege, "may be

asserted by either spouse to bar the testimony of the other regarding marital communications

made in confidence."  *Engelmann v. Nat'l Broad. Co.*, *Inc.*, No. 94 Civ. 5616, 1995 WL 214500,

*2 (S.D.N.Y. Apr. 10, 1995) (citing *Wolfle v. United States*, 291 U.S. 7, 14, 54 S. Ct. 279, 280

(1934)).  However, even if Defendant could show that his physical gestures were communicative,

the marital communications privilege does not apply in situations where one spouse allegedly

threatens or assaults the other.  *See United States v. Bahe*, 128 F.3d 1440, 1445 (10th Cir. 1997)

(citations omitted); *United States v. White*, 974 F.2d 1135, 1138 (9th Cir. 1992).

Finally, even if one of the marital privileges applied, any evidence that police obtained

through April Robare's statements is admissible.  Defendant's argument that law enforcement

officials improperly obtained a search warrant fails because their search of the camper was

consensual, not based on a warrant.  Where police obtain consent from an authorized third party,

"neither a warrant nor probable cause is necessary to justify the search . . . ."  *United States v.*

*Lewis*, 386 F.3d 475, 481 (2d Cir. 2004) (citation omitted).  Moreover, the fruit-of-the-

poisonous-tree doctrine does not apply in cases such as this, where the defendant asserts an

---

[8] The Court stated at oral argument that, in the event that April Robare wishes to assert
her privilege not to testify at trial, the parties may address this issue at that time.

evidentiary privilege that is not constitutionally-derived. *See United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (citation omitted). Accordingly, the Court denies Defendant's motion to suppress the fruits of April Robare's statements to the police.

### 3.       *Intercepted telephone conversations*

While Defendant was detained at Onondaga County Penitentiary in Jamesville, New York, prison officials monitored and recorded his telephone calls. Defendant contends that the Court should suppress these recordings because they were made in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and the Fourth Amendment to the United States Constitution. *See* Dkt. No. 47 at 12.

Although there is no need to conduct a suppression hearing if the Government does not intend to use the intercepted telephone conversations other than to impeach Defendant if he decides to testify, *see United States v. Thomas*, 249 F.3d 725, 730 n.6 (8th Cir. 2001); *United States v. Richmond*, No. 1:05 CR 501, 2006 WL 3327674, *1 n.1 (N.D.N.Y. Nov. 15, 2006), the Government could not say for certain how it would use these statements. Accordingly, the Court will conduct a brief suppression hearing on this issue before trial.

## C.     Motions to dismiss

### 1. The Commerce Clause

Defendant contends that 18 U.S.C. § 922(g)(1) as applied in this case exceeds Congress' authority under the Commerce Clause. *See* Dkt. No. 47 at 1. Specifically, he argues that his conduct did not substantially affect interstate commerce as *United States v. Lopez*, 514 U.S. 549

(1995), requires.  *See id.* at 2.

Section 922(g)(1) does not, on its face, exceed Congress' power to regulate interstate commerce.  *See United States v. Sorrentino*, 72 F.3d 294, 296 (2d Cir. 1995), *overruled on other grounds*, *United States v. Abad*, 514 F.3d 271 (2d Cir. 2008); *United States v. Santiago*, 238 F.3d 213, 217 (2d Cir. 2001) (reaffirming *Sorrentino*).  Unlike the statutory provision under consideration in *Lopez*, § 922(g)(1), by its express terms, requires a legitimate nexus with interstate commerce.  *See Sorrentino*, 72 F.3d at 296-97 (citations omitted).

The next question, whether the facts in this case are sufficient to establish a substantial nexus with interstate or foreign commerce, cannot be decided before trial.  On a motion to dismiss an indictment pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure, a court may consider "any defense, objection, or request that" is capable of determination "without a trial on the general issue."  Fed. R. Crim. P. 12(b)(2).  "The general issue in a criminal trial is . . . whether the defendant is guilty of the offense charged."  *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995) (citation omitted).  It is well-established that an indictment that is complete on its face is not subject to challenge on the ground that the evidence presented to the grand jury was legally insufficient.  *See United States v. Calandra*, 414 U.S. 338, 344-45 (1974); *Lawn v. United States*, 355 U.S. 339, 349-50 (1958).  Thus, where a criminal statute contains a jurisdictional element requiring a nexus with interstate commerce, the indictment need not specify the precise nature of that nexus.  *See United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (holding that an indictment under the Hobbs Act need not specify the exact nature of the effect on interstate commerce); *United States v. McCarty*, 862 F.2d 143, 145-46 (7th Cir. 1988) (holding that an indictment under § 922(g) need not specify the precise effect on interstate commerce).

-12-

The Court, therefore, denies Defendant's motion to dismiss on this ground.

### 2. The Double Jeopardy Clause

Defendant's submission filed as Docket Number 51 is somewhat unclear.  At one point,
he states that "the pending superseding indictment represents a sham-prosecution exception to
the dual sovereignty doctrine."  *See* Dkt. No. 51 at 3.  He follows this assertion by stating that
"the State of New York essentially manipulated this sovereign into prosecuting this case . . . ."
*See id.* at 9.

Since Defendant invokes the dual-sovereignty doctrine and the sham-prosecution
exception and argues that the state prosecutor "seduced" the Government into prosecuting him in
federal court, the Court construes this submission as asserting a double-jeopardy argument.

The Double Jeopardy Clause of the Fifth Amendment forbids multiple prosecutions of the
same offense after acquittal or conviction.  *See Abbate v. United States*, 359 U.S. 187, 194
(1959).  However, it does not forbid the federal government and the state government from
simultaneously or sequentially prosecuting a defendant for the same offense in accord with the
concept of "dual sovereignty."  *See United States v. Vanhoesen*, 529 F. Supp. 2d 358, 362
(N.D.N.Y. 2008) (citations omitted).  The dual sovereignty doctrine applies unless "'one
prosecuting sovereign can be said to be acting as a "tool" of the other, or where the second
prosecution amounts to a "sham and a cover" for the first.'"  *Id.* (quotation omitted).

Even assuming jeopardy attached in the state proceedings, Defendant does not submit any
evidence that the present federal action is a "sham and a cover" for the original state action.  To
demonstrate a "sham" proceeding, Defendant must show that one sovereign effectively

-13-

controlled the other.  *See Vanhoesen*, 529 F. Supp. 2d at 362.  Since Defendant does not provide

any evidence of such control, the Court denies his motion to dismiss on this ground.


### 3. False or misleading evidence before the grand jury

Defendant makes various arguments accusing the Government of presenting the grand

jury with false or misleading evidence.  Among other things, Defendant alleges that Special

Agent Meeks told the grand jury, in error, that the firearm at issue was a .20 gauge sawed-off

shotgun, when in fact the firearm was a .16 gauge shotgun.  *See* Dkt. No. 51 at 11.  Defendant

also alleges that Special Agent Meeks erroneously told the grand jury that the New York State

Police found the firearm at the same time that they arrested Defendant.  *See* Dkt. No. 57 at 8.

As a preliminary matter, it is unclear whether the grand jury testimony to which

Defendant refers pertains to the original Indictment or the Superseding Indictment.  To the extent

that Defendant cites testimony from the original Indictment, this is irrelevant to the current,

Superseding Indictment, the purpose of which was to cure any errors in the original Indictment.

Furthermore, as the Court indicated at oral argument, "courts may not review facially

valid indictments based on complaints that the prosecution's presentation of evidence was

'incomplete' or 'misleading.'"  *United States v. Rodriguez*, No. 95 CR. 0754, 1996 WL 479441,

*1 (S.D.N.Y. Aug. 22, 1996) (quoting [*United States v. Williams*, 504 U.S. 36,] 54-55 [(1992)]);

*cf. United States v. Ruggiero*, 934 F.2d 440, 447 (2d Cir. 1991) (holding that, even if prosecutors

exaggerated the content of surveillance tapes in oral summary to grand jury, this did not add

much to the facts and, therefore, did not amount to prosecutorial misconduct warranting

dismissal of indictment); *Rosario-Dominguez v. United States*, 353 F. Supp. 2d 500, 514

-14-

(S.D.N.Y. 2005) (holding that misidentification of the speaker in recorded telephone calls implicating the defendant in the conspiracy did not warrant dismissal of the indictment).  Since the Superceding Indictment is facially valid, the Court finds that the alleged misstatements cannot provide a basis for dismissal of the Superseding Indictment.[9]

### 4. Unconstitutional vagueness

Defendant contends that "18 U.S.C. § 922(g)(1) does not provide fair notice that said intrastate receipt of the shotgun constituted a federal offense conferring jurisdiction on this Court."  *See* Dkt. No. 51 at 14.  This argument is without merit.

The Second Circuit has held, in accord with a number of other circuits, "that on its face, § 922(g)(1) 'applies to a possession of a gun that previously moved in interstate commerce.'" *United States v. Carter*, 981 F.2d 645, 647 (2d Cir. 1992) (quotation and other citations omitted).  Thus, in *Carter*, the court found that § 922(g)(1) is not unconstitutionally vague because "it provides notice to felons in possession of firearms which have traveled in interstate commerce that their conduct is prohibited."  *Id.*  In accord with *Carter*, the Court denies Defendant's motion to dismiss on this ground.

---

[9] Defendant also accuses the Government of suborning perjury.  *See* Dkt. No. 57 at 4, 21, 23.  A court may dismiss an indictment where prosecutors suborned perjury before the grand jury.  *See United States v. Williams*, 504 U.S. 36, 46 n.6 (1992).  However, a defendant must show specific, credible evidence of government misconduct.  *See United States v. Torres*, 901 F.2d 205, 232-33 (2d Cir. 1990); *United States v. Moran*, 349 F. Supp. 2d 425, 474 (N.D.N.Y. 2005).  Since the grand jury testimony does not reveal any evidence whatsoever that the Government suborned perjury, the Court finds that this allegation cannot provide a basis for dismissal.

**5. The "antique firearm" exception to 26 U.S.C. § 5845(g) and 18 U.S.C. § 921(a)(16)**

Defendant contends that the firearm at issue in this case is an "antique firearm" and, therefore, is exempt from criminal prosecution for possession and failure to register.[10]  *See* Dkt. No. 59.

Defendant's argument presents a colorable issue of fact for trial; however, it is not a proper argument on a motion to dismiss an indictment.  As stated, an indictment that is complete on its face is not subject to challenge on the ground that the evidence presented to the grand jury was legally insufficient.  *See Calandra*, 414 U.S. at 344-45; *Lawn*, 355 U.S. at 349-50.  Therefore, the Court denies Defendant's motion to dismiss on this ground.


**IV. CONCLUSION**

After carefully reviewing the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument, the Court hereby

**ORDERS** that Defendant's discovery motions are **DENIED**; and the Court further

**ORDERS** that Defendant's motion for reconsideration of the Court's January 29, 2008 Memorandum-Decision and Order is **DENIED**; and the Court further

**ORDERS** that Defendant's motion to suppress the fruits of April Robare's statements to police on marital-privilege grounds is **DENIED**; and the Court further

---

[10] The Government acknowledges that it is uncertain when the firearm was manufactured. *See* Dkt. No. 65 at 27.  Therefore, the Government indicated in its response and at oral argument that, if it is unable to gather more definitive proof of the firearm's provenance, it will move to dismiss Count III of the Superseding Indictment before trial.  *See id.*

**ORDERS** that Defendant's motions to dismiss the Superseding Indictment are **DENIED**; and the Court further

**ORDERS** that the Court will conduct a suppression hearing on **September 17, 2008**, at **9:30 a.m.** to decide Defendant's motion to suppress the telephone conversations recorded at Onondaga County Penitentiary.

**IT IS SO ORDERED.**

Dated: July 25, 2008
      Syracuse, New York

                                   _____
                                   Frederick J. Scullin, Jr.
                                   Senior United States District Court Judge